BENNETT LAWRENCE, administrator, plaintiff in error, vs. ALLEN PHILPOT, guardian, defendant in error.

[1.] The only source, in general, from which an administrator with the will annexed, can derive the power to sell the slaves held by him, as administrator, is the will, or, an order of the Court of Ordinary.

[2.] An administrator and one C. referred a dispute between them as to some negroes, to arbitrators, who awarded the negroes to the administrator, and a sum of money to C., to be paid out of the negroes. The negroes were worth ten times the sum of money. The administrator proceeded to take steps to sell the negroes; the next of kin prayed an injunction to prevent the sale.

*Held*, That the injunction was properly granted.

In Equity, from Floyd county. Decision on motion to dissolve the injunction, by Judge HAMMOND, at chambers, 23d November, 1858.

This bill was filed by Allen Philpot, as the guardian of Sue Ledbetter, a minor child of John Ledbetter, deceased, against Bennett Lawrence, administrator, with the will annexed, of said deceased, to restrain and enjoin the sale of

certain negroes belonging to the estate of said deceased, and for an account, &c.

The bill states, that John Ledbetter, late of the county of Floyd, died in August, 1856, leaving a will, in and by which he appointed Andrew M. Sloan his executor, and the guardian of his infant daughter, the said Sue, and of the child of which his wife was *enciente*; that he further willed and bequeathed to his wife two hundred dollars, together with all the household and kitchen furniture, and all the rest and residue of his estate, of which he might die possessed, or have *in expectancy*, he gave to his said child or children; that Sloan refused to qualify as executor, and defendant was appointed administrator, with the will annexed, and complainant, guardian of said infant; that shortly after the *death of testator*, his wife *was delivered of a child*, and soon thereafter, both mother and child died, leaving said Sue as sole legatee and owner of all the estate of testator; that said testator was possessed of a considerable estate real and personal, and had in expectancy seven negroes of the value of seven thousand dollars, all of which has come into the possession of said Lawrence, administrator with the will annexed, as aforesaid; that said administrator has sold all the property, owned by, and in the possession of deceased, at the time of his death, and that he has cash in hand more than sufficient to pay all the debts; that he is now proceeding to sell the same negroes which have come into his hands since testator's death, and has advertised the same for sale, and will sell them unless restrained by a Court of Equity, which sale will be contrary to the provisions of said will, and injurious to the rights and interests of complainant's ward, to whom said negroes belong.

The bill further states, that said negroes, after the termination of the life estate, at which time testator's right, and interest as remainderman vested in possession, and before

said right could be asserted, came into the possession of one Lee Crittenden, who ran said negroes off, and refused to deliver up the same, until complainant took, or was about to take steps for their recovery, when said Crittenden delivered said negroes up to defendant. The bill prays that the defendant be enjoined from selling said negroes, that he deliver them to complainant, as guardian of said Sue Ledbetter, and that he account for the estate in his hands, and pay over to complainant the balance after the payment of the debts, &c.

The injunction issued agreeably to the prayer of the bill.

The answer admits the death of John Ledbetter, as alleged in complainant's bill, that he left a will, and defendant was appointed administrator, with the will annexed, as stated; and that complainant was appointed guardian but alleges that defendant is unfit for such trust; that he is addicted to drunkenness, has small means, and has given a very insufficient bond.

The defendant further admits that he is in possession of said slaves, and states that after the death of the tenant for life of said slaves, at which time the right of testator, accrued as remainderman, Crittenden, as the executor of the tenant for life, took possession of the negroes, and the contest in relation thereto, between defendant and Crittenden, was submitted to arbitrators, who awarded said negroes to defendant, as the administrator, with the will annexed, of John Ledbetter, deceased, with directions that the same be sold, and that the sum of——be paid from the proceeds of said sale, to said Crittenden ; and that it is in pursuance of, and in compliance with said award, that defendant is proceeding to sell said negroes; denies that there is more money in his hands than is necessary to pay the debts of deceased ; claims that he is acting legally, and for the benefit of said infant, whose interest would be promoted by the contemplated sale.

Upon the coming in of the answer, defendant moved to

dissolve the injunction. The Court refused the motion, to which decision defendant excepted.

PRINTUP, for plaintiff in error.

UNDERWOOD; CHISOLM; and WADDELL, *contra.*

*By the Court.*—BENNING J. delivering the opinion.

Was the Court below right in refusing to dissolve the injunction?

The motion to dissolve the injunction, was put on two grounds; one, that there was no equity in the bill; the other, that if there was any equity in the bill, it was sworn off, by the answer.

Was there any equity in the bill? We think, that there was.

The right of an administrator, with the will annexed, to sell slaves, must, in general, be derived either, from the will, or, from an order of the Court of Ordinary.

The bill, in the present case, shows that this right could have been derived from neither of these sources; for it shows, that the will did not confer on the administrator any authority to sell; and it also shows, that there was no order of the Court of Ordinary authorizing him to sell.

In short, there is in the bill, that which, taken as true, requires us to say, that the administrator had no authority to sell the slaves. Consequently, it must be true, that there was equity in the bill.

Does the answer swear off the equity of the bill? We think not. It does not pretend to say, that the will gives the administrator, the power to sell the slaves; or, that there is, any order of the Court of Ordinary, that does. What it says, is, that there was a dispute between the administrator, and one Crittenden about the negroes, and that this was referred to arbitrators, who awarded the negroes, to the administrator, and, a sum of $639 80, besides costs, to

Crittenden, and directed a sale of the negroes, "to pay the award and the expenses thereof."

The answer insists, that a right to the administrator to sell, is derived from this direction of the arbitrators.

But in the first place, all this is new matter, and is not responsive to any thing in the bill; and in the second place, it is not sufficient, if it be taken as true. The negroes are it seems, worth $7,000. The "expenses" to be paid out of them will perhaps amount to $700. There can be no necessity, then, for selling all the negroes to pay those "expenses." It may, perhaps, turn out, that it will be necessary to sell some of the negroes, to pay those expenses. That will, probably, depend on the result of some litigation in which, the administrator is involved. As things stand, the administrator would act wisely, to consult the Court of Ordinary before he sells one of the negroes.

Judgment affirmed.